IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 03-cv-02671-RPM

JOHNNY WELLS,
DONALD R. BROOKS, and
RILEY ANDREW SCHAEFFER,
on behalf of themselves and all others similarly situated,

               Plaintiffs,

v.

GANNETT RETIREMENT PLAN and
GANNETT CO., INC.,

               Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Jurisdiction for this civil action is granted by 29 U.S.C. § 1132(e) of the Employee Retirement Income Security Act ("ERISA") for the first and second claims for relief of the Amended Class Action Complaint, filed March 17, 2004. The third claim for relief was dismissed by order entered March 22, 2005.

On July 11, 2006, a Class Certification Order entered, certifying the following two classes:

    1. <u>The Pension Equity Formula Class</u>. All participants in the Gannett Retirement Plan whose benefits are calculated pursuant to the Pension Equity Provisions contained in Article VI.A of the Plan, as amended effective January 1, 1998, excluding all individuals who first became participants in the Plan after December 31, 2002, and excluding all individuals who terminated employment with Gannett and received a lump sum distribution of their benefits prior to December 31, 2003.

    2. <u>The Transition Class</u>. All participants in Gannett Retirement Plan prior

to January 1, 1998 whose benefits were converted, on January 1, 1998, to the Pension Equity formula under The Pension Equity Provision contained in Article VI.A of the Plan, as amended effective January 1, 1998, excluding all individuals who terminated employment with Gannett and received a lump sum distribution of their benefits prior to December 31, 2003.

The principal contention in this case is that the Pension Equity Formula ("PEF") in the defendants' amended retirement plan for determining a participant's accrual of benefits violates the prohibition of age discrimination in 29 U.S.C. § 1054(b)(1)(H)(i) providing as follows:

> . . . a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

There is no dispute that the PEF must be classified as a "defined benefit" plan and therefore subject to this statutory prohibition. In reality, the PEF combines elements of a "defined contribution" plan with those of a "defined benefit" plan and is therefore a hybrid plan. The most significant difference from the traditional defined benefit plan, which Gannett had before the change to the PEF, made effective January 1, 1998, is that each employee has a hypothetical individual account which can be calculated at any time. The advantage is that the benefit to the participant can be determined at the termination of employment before reaching the retirement age of 65. Upon such early termination of employment, the participant may elect a lump sum payment or an annuity or defer receipt to retirement age. The determination of the amount of the benefit received as a lump sum on early termination is computed by discounting for interest from age 65 to the current age using statutory interest rates.

The employee earns credits annually at percentages of earnings varying according to the years of credited service. For earnings up to the Social Security wage base, an employee will earn five points per year for the first ten years of service, seven points per year for the second ten

years of service, and nine points per year for each year of service beyond twenty years.[1] Accordingly, the total number of percentage points a participant may earn by working until normal retirement age will depend upon the age at which the employee began work. An employee beginning work at age 25 would have the potential of 40 years of service, accumulating 300 potential percentage points, while an employee beginning work at age 45 would have only 20 years of potential service, earning 120 points. It is the effect of this disparity, when the benefit is converted to an annuity commencing at normal retirement age, that the plaintiffs claim to be a violation of the age discrimination prohibition in the Act. The defendants assert that the PEF is age neutral because two employees with the same service and different ages receive the same basic percentages in any given year.

The resolution of this dispute depends upon the meaning of the statutory phrase "rate of an employee's benefit accrual." There is no statutory definition of benefit accrual. The plaintiffs contend that it should be interpreted to mean "accrued benefit" which is statutorily defined as the benefit payable under the plan expressed in the form of an annual annuity beginning at normal retirement age. 29 U.S.C. § 1002(23)(a). Using that definition, it is apparent that the actual benefit obtained (the output of the PEF) will be different depending upon the age of the employee when first becoming a participant in the PEF. The defendants assert that the disputed statutory phrase means the rate at which the employee's years of service are credited. The rate of input is the same regardless of the employee's age.

This is not a novel question. In *Cooper v. IBM Personal Pension Plan,* 457 F.3d 636 (7th Cir. 2006), the court compared § 1054(b)(1)(H)(i), covering defined benefit plans with

---

[1]Although the percentages earned on final average earnings over the Social Security wage base are higher, that is not material to the defendants' motion.

3

§ 1054(b)(2)(A), governing defined contribution plans, providing that such a plan satisfies the requirements if "allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." The court observed that while the rule for defined benefit plans is phrased as prohibitory and that for defined contribution plans is permissive, they say the same thing–"the employer can't stop making allocations (or accruals) to the plan or change their rate on account of age." *Id*. at 638. The court rejected the argument made here–that the definition of "accrued benefit" in § 1002(23)(A) should be incorporated into § 1054(b)(1)(H)(i).

The *IBM* plan was a "cash balance" hybrid in which the employee's earnings credit and interest credits are imputed to a hypothetical individual account. An employee who quits or retires may withdraw the balance in cash or as a fully funded annuity.

The Third Circuit Court of Appeals followed the same reasoning in *Register v. PNC Financial Services Group, Inc.,* 477 F.3d 56 (3rd Cir. 2007). That, too, was a cash balance plan in which interest credits were used to determine an annuity at retirement age. The court summarized the plaintiffs' argument that the interest credits were age discriminatory because an employee leaving at age 50 after 20 years of service will have a larger annuity benefit at age 65 than one whose 20 years of service concludes with retirement at age 65 because the younger employee receives 15 more years of interest credit. The court rejected the same argument made in *IBM* and here–that the definition of "accrued benefit" in § 1002(23)(A) should be incorporated into § 1054(b)(1)(H)(i). The Third Circuit made the same textual analysis of the statutory language as the Sixth Circuit in *IBM* and found that the parallel language for defined contribution plans prohibited the same behavior. The cash balance plan before the court was

4

considered comparable to a defined contribution plan in that both define benefits in terms of stated account balances, although the former is hypothetical and the latter is actual.

The plaintiffs in this case attempt to distinguish these two opinions by observing that there is no cumulative interest credit to the individual's account in the PEF and both circuit courts referred to the time value of money as support for their reasoning. The distinction has no legal significance to the textual analysis of language made by both courts.

The plaintiffs also contend that many Gannett employees who were participants in the Plan before the January 1, 1998, conversion to the PEF were required to work after the conversion without any accrual of additional benefits because of the conversion formula used to protect the accrued benefits as required by § 1054(g). The PEF calculated a "starting percentage" based on a calculation of the present value as of December 31, 1997, of the participant's then existing accrued benefit. If the accrual of benefits percentages under the PEF results in an opening balance in the employee's hypothetical account that is smaller than the calculated prior accrued benefit, no new credit is given until the new account balance equals the protected benefit. Thus, there is a "wear-away period" during which the participant does not accumulate new benefits. The plaintiffs assert that this constitutes a cessation of benefits for some older workers. The only support for that claim submitted in the briefing is the experience of representative plaintiff Andrew Schaeffer whose wear-away period was six years. The class claim has not been supported by a showing that it was age discriminatory. The claim of cessation

of benefits depends upon the same argument as to the meaning of benefit accrual in § 1054(b)(1)(H) that is rejected as a matter of statutory interpretation.

Upon the foregoing, it is

ORDERED that the plaintiffs' motion for partial summary judgment is denied. The defendants' motion for summary judgment is granted. Judgment will enter for the defendants Gannett Retirement Plan and Gannett Co., Inc., dismissing all claims of the class plaintiffs and the individual plaintiffs with costs to be awarded.

Dated: July1, 2008

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge